UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY A. GIPSON, <br><br> Plaintiff, <br><br> v. <br><br> CVS HEALTH, <br><br> Defendant. | Case No. 23-cv-02655 (CRC) |

**MEMORANDUM OPINION**

Plaintiff Anthony A. Gipson, a former employee at a CVS Pharmacy retail store in Washington, D.C, sued Defendant CVS Health ("CVS") for discrimination in the Superior Court of the District of Columbia.  Compl. at 1; Mot. Arb. at 2.  Proceeding *pro se*, Gipson filed a short complaint with little factual background but alleges that he was "forced off of work" and "discriminated [against] twice in 3 y[ea]rs."  Compl. at 1.  CVS removed the case to federal court and now moves to compel arbitration on the grounds that Gipson and CVS entered into a binding arbitration agreement that encompasses his present claims.  The Court agrees and accordingly will dismiss the case without prejudice.  Gipson has also filed a motion to appoint counsel, which the Court will deny.

I.  **Background**

In 2014, CVS introduced an "Arbitration of Workplace Legal Disputes" policy, under which CVS employees and CVS mutually agreed to submit disputes to binding arbitration. Declaration of Robert Bailey ("Bailey Decl.") ¶ 6 & Ex. A.  The relevant part of the policy provided as follows:

> **1. Mutual Obligation to Arbitrate.**  Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be

decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Policy. This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16). Employees accept this Policy by continuing their employment after becoming aware of the Policy.

**2. Claims Covered by This Policy.** Except as otherwise stated in this Policy, Covered Claims are any and all legal claims, disputes or controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment. Covered Claims include but are not limited to disputes regarding . . . discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment.

Id., Ex. A at 1–2.

To accompany its arbitration policy, CVS created an arbitration training course that employees could access through CVS's learning management system—"LEARNet." Id. ¶¶ 5, 8. Every CVS employee has a unique log-in credential and password to LEARNet, and CVS maintains records of employees' participation in LEARNet courses. Id. ¶ 5. At the time CVS put its arbitration policy into effect, both LEARNet and CVS managers prompted employees to complete the arbitration course, which was delivered through a series of PowerPoint slides. Id. ¶ 14. The third slide cued employees to follow a link to the "CVS Health Colleague Guide to Arbitration," which described arbitration proceedings generally, explained CVS's arbitration policy, and included a copy of the policy. Id., Ex B. at 3, Ex. C.[1] The guide also detailed employees' opt-out rights. Id., Ex. C at 7. It stated in relevant part:

Arbitration is a matter of contract between the colleague and CVS Health. Colleagues accept the policy by continuing their employment with CVS Health after becoming aware of the policy. With that being said, we want colleagues'

---

[1] CVS refers to its employees as "colleagues." Mot. Arb. 2 n.1.

> participation to be voluntary.  Colleagues will be asked to acknowledge and agree to the policy, but from the time that a colleague first views or receives the policy, he or she has thirty days to opt out of the policy.  If a colleague opts out, he or she will not be obligated to go to arbitration and can continue to use the traditional court system as before.  Likewise, if a colleague opts out, CVS Health will not be required to arbitrate any disputes it has with that colleague.
>
> **How to Opt Out**
> In order to opt out, a colleague must mail a written, signed and dated letter stating clearly that he or she wishes to opt out of the CVS Health Arbitration of Workplace Legal Disputes Policy.  The letter must be mailed to CVS Health, P.O. Box 969, Woonsocket, RI 02895.  In order to be effective, the colleague's opt out notice must be postmarked no later than 30 days after the date the colleague first views or receives the policy.  Please note, sending in a timely notice is the **only** way to opt out.  A colleague cannot opt out by refusing to complete training or attend meetings about the policy.

Id.  The guide further stated, "In order to complete the acknowledgement and receive credit for this course, close out of this PDF via the 'X' on the red bar (do not close out of the entire course window) and click 'Next' to access the acknowledgement." Id. at 9.  The presentation then led to an acknowledgment slide stating:

> By clicking the 'Yes' below, I am acknowledging and agreeing: that I have carefully read the CVS Health Policy, 'Arbitration of Workplace Legal Disputes' (the 'Policy') and understand that it applies to me; that I will raise any questions I may have about the Policy to my supervisor or Human Resources and may seek independent legal advice as well; . . . that I have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms; that, to opt out, I must mail a written, signed and dated letter, stating clearly that I wish to opt out of the Policy to CVS Health, P.O. Box 969, Woonsocket, RI 02895, which must be postmarked no later than 30 days after the date I first received or viewed a copy of this Policy; that by being covered by the Policy and not opting out, CVS Health and I are obligated to go to arbitration instead of court to resolve legal claims covered by the Policy . . . .

Id., Ex. B at 20.  After clicking "Yes" and submitting the acknowledgment, employees were notified that they had completed the course.  Id., Ex. B at 21.  When logged into the course, employees could also print copies of CVS's arbitration policy and guide.  Id. ¶ 15.

3

CVS's LEARNet records reflect that Gipson, who began his employment in May 2012, completed the arbitration course on November 20, 2014. Id., Ex. D at 1, 4. CVS never received an opt-out notice from him. Id. ¶ 17.

## II. Legal Standard

The Federal Arbitration Act ("FAA") provides that a contract provision requiring the arbitration of disputes "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The D.C. Circuit has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Wolff v. Westwood Mgmt., LLC, 558 F.3d 517, 520 (D.C. Cir. 2009). Notwithstanding a prior agreement to arbitrate, plaintiffs often attempt to resolve disputes in federal court. Section 4 of the FAA provides a remedy for the defendant: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Such a petition is often called a motion to compel arbitration, and D.C. Circuit precedent instructs courts in this jurisdiction to evaluate these motions under the summary judgment standard of Federal Rule of Civil Procedure 56. Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863, 865 (D.C. Cir. 2008). Review is limited to "whether or not there [was] a meeting of the minds on the agreement to arbitrate." Id. (cleaned up). Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56). The party seeking to compel arbitration bears the burden of proving the other party agreed to arbitrate, Camara v. Mastro's Rests. LLC, 952 F.3d 372, 373 (D.C. Cir. 2020), and therefore "must first present 'evidence sufficient to demonstrate an enforceable agreement to arbitrate,'" Fox v. Comput. World Servs. Corp., 920 F. Supp. 2d 90, 96 (D.D.C.

2013) (cleaned up). "The burden then shifts to [the non-moving party] to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in [Rule] 56." Id. (cleaned up).

## III. Analysis

Because "arbitration is a matter of contract[,]" AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (cleaned up), the "threshold issue" is whether the parties entered into a valid and binding arbitration agreement, RDP Techs., Inc. v. Cambi AS, 800 F. Supp. 2d 127, 138 (D.D.C. 2011). "When deciding whether the parties agreed to arbitrate a dispute, courts apply 'ordinary state-law principles that govern the formation of contracts.'" Slaughter v. Nat'l R.R. Passenger Corp., 460 F. Supp. 3d 1, 6 (D.D.C. 2020) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Under D.C. law, "[a] contract is formed when there is an offer, an acceptance, and valuable consideration" exchanged between the parties. Dixon v. Midland Mortg. Co., 719 F. Supp. 2d 53, 57 (D.D.C. 2010) (citing Paul v. Howard Univ., 754 A.2d 297, 311 (D.C. 2000)).

CVS has presented "evidence sufficient to demonstrate an enforceable agreement to arbitrate" as each element of contract formation was satisfied. Fox, 920 F. Supp. 2d at 96 (cleaned up). CVS presented Gipson with an offer (the arbitration policy), and CVS's records reflect that Gipson accepted the offer by acknowledging its terms and not choosing to opt out. As other courts in this district have found, parties can manifest assent to arbitration agreements by clicking an acknowledgment button and then not exercising their right to opt out. See, e.g., Osvatics v. Lyft, Inc., 535 F. Supp. 3d 1, 11 (D.D.C. 2021) (finding valid offer and acceptance in a contract that required the user to click "I Agree" and then opt out to avoid arbitration); Samenow v. Citicorp Credit Servs., Inc., 253 F. Supp. 3d 197, 203 (D.D.C. 2017) ("District of Columbia law provides generally that an offeror is entitled to prescribe an exclusive method of

5

acceptance, . . . and that the method of acceptance can be a physical act." (cleaned up)).  The parties also exchanged adequate consideration:  Both sides agreed to submit disputes to arbitration.  See 3511 13th St. Tenants' Ass'n v. 3511 13th St., N.W. Residences, LLC, 922 A.2d 439, 443 (D.C. 2007) ("[A] promise is a sufficient consideration for a return promise" (cleaned up)); Shatteen v. Omni Hotels Mgmt. Corp., 113 F. Supp. 3d 176, 181 (D.D.C. 2015) ("[M]utual agreements to arbitrate are independently sufficient forms of consideration." (cleaned up)).

Gipson, in turn, has not met his burden of raising "a genuine issue of material fact as to the making of the agreement." Fox, 920 F. Supp. 2d at 96 (cleaned up).  His opposition states that he "ha[s] not agreed to arbitration," Opp'n at 1, but he has offered no evidence, much less "evidence comparable to that identified in [Rule] 56," to support this claim, Fox, 920 F. Supp. 2d at 96 (cleaned up).[2]  "[W]ith no evidence supporting [his] disavowal," this assertion does not create a genuine issue of fact.  Hill v. Wackenhut Servs. Int'l, 865 F. Supp. 2d 84, 91 (D.D.C. 2012) ("Plaintiffs' mere assertion that they have not agreed to arbitrate disputes with their employer—with no evidence supporting the disavowal—is insufficient to create an issue of fact in light of declarations submitted by Defendants, the form employment contract, and the three contracts signed and initialed by Plaintiffs[.]").  Moreover, to the extent Gipson claims he did not read the arbitration policy despite completing the course, "as a general rule, 'one who signs a contract has a duty to read it, and is bound by its provisions if he had the opportunity to read and understand it.'"  Shorts v. Parsons Transp. Grp., Inc., 679 F. Supp. 2d 63, 68 (D.D.C. 2010) (quoting Stanwood v. Welch, 922 F. Supp. 635, 640 (D.D.C. 1995)); see also id. ("[W]here an employee has signed an employment agreement and the agreement is made available by the

---

[2]  Plaintiff styled his filing as a "Motion," and, in it, he "move[d] to dismiss [the] motion of Defendant."  Opp'n at 1.  The Court construes this filing as an opposition to CVS's motion.

employer through resources such as the company intranet, it is the employee's responsibility to familiarize herself with the relevant policies."). The Court thus finds that the parties entered into an enforceable agreement to arbitrate disputes.

There is also no dispute that the arbitration agreement encompasses the claims in Gipson's complaint. He alleges that he was "forced off of work" and "discriminated [against] twice in 3 y[ea]rs." Compl. at 1. And, though he does not ground his claims in a particular statute, the arbitration policy covers the possible sources. See Bailey Decl., Ex. A at 1–2 (The policy covers claims regarding "discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment.").

All that remains to decide with respect to CVS's motion is whether the Court should stay or dismiss the case pending arbitration. The Court has previously noted a circuit split on the issue of whether district courts must stay proceedings after all claims have been referred to arbitration, or whether they retain the discretion to dismiss such cases outright. See Selden v. Airbnb, Inc., No. 16-CV-00933 (CRC), 2016 WL 6476934, at *9 n.5 (D.D.C. Nov. 1, 2016), aff'd on other grounds, 4 F.4th 148 (D.C. Cir. 2021). Section 3 of the FAA provides that courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had," 9 U.S.C. § 3, but the circuits are split on "whether § 3 mandates a stay or if it permits a court to dismiss a lawsuit when all of the claims before it are subject to an arbitration agreement," Gonzales v. GrubHub Holdings, Inc. ("Gonzales I"), No. 23-CV-1650 (RDM), 2023 WL 6037126, at *2 (D.D.C. Sept. 14, 2023), aff'd, No. 23-7123, 2024 WL 1222048 (D.C. Cir. Mar. 21, 2024). Though the D.C. Circuit has not staked out its general position on this issue, it has found that district courts may grant dismissal if "no [party] request[s] a stay." Wolff, 558

7

F.3d at 521. And, in an unpublished opinion, the circuit upheld the application of this rule in a case with a *pro se* plaintiff. See Gonzales v. Grubhub Holdings, Inc., No. 23-7123, 2024 WL 1222048, at *1 (D.C. Cir. Mar. 21, 2024).

Because neither party has requested a stay and in the "absen[ce] [of] . . . any indication that Plaintiff is likely to seek relief from the Court after the arbitration is completed," Gonzales I, 2023 WL 6037126, at *2, the Court finds dismissal warranted.

### IV. Motion to Appoint Counsel

Finally, Gipson's motion to appoint counsel. Under this district's local rules, a court may appoint counsel for a *pro se* litigant who has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. LCvR 83.11(b)(3). Gipson did not seek to proceed *in forma pauperis* in this court but was allowed to proceed without prepayment of costs in D.C. Superior Court. See Appl. To Proceed w/o Prepayment of Cost Granted by Clerk, Anthony A. Gipson v. CVS Health, No. 2023-CAB-004967 (D.C. Super. Ct. Aug. 14, 2023). Even assuming he meets § 1915's requirements, the Court declines to appoint counsel. Because the parties must submit their dispute to arbitration, appointing counsel before this Court would not serve "the interests of justice." LCvR 83.11(b)(3)(iv).

### V. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Compel Arbitration, deny Plaintiff's Motion to Appoint Counsel, and dismiss the case without prejudice. A separate order shall accompany this memorandum opinion.

                                                    CHRISTOPHER R. COOPER
                                                    United States District Judge

Date: April 5, 2024